

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-169-CV

HARVEY G. DAVISSON, PH.D.                                            APPELLANTS
AND ANGELA DONNA SELF, M.D.
AND THE DAVISSON CLINIC

V.

JAMES T. NICHOLSON,                                                   APPELLEES
INDIVIDUALLY, AND PATRICIA
NICHOLSON, INDIVIDUALLY AND
AS NEXT FRIEND OF JASON
THOMAS NICHOLSON AND RYAN
JAMES NICHOLSON, MINORS

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

After considering the motion for rehearing filed by appellant Harvey G.

Davisson, Ph.D., we deny the motion, but we withdraw our prior opinion and

judgment of February 4, 2010 and substitute the following.

This is an interlocutory appeal from the trial court's order denying appellants' motions to dismiss for failure to timely file an adequate expert report in this health care liability case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008). We affirm in part and reverse and remand in part.

## Factual and Procedural Background

On November 24, 2008, appellees James T. Nicholson and his wife Patricia[1] filed a health care liability claim against appellants Harvey G. Davisson, Ph.D., Angela Donna Self, M.D., and The Davisson Clinic (the Clinic).[2] The Nicholsons alleged that in February 2003, James responded to a radio advertisement by Dr. Davisson and went to the Clinic complaining of "feeling stressed and having an inability to concentrate." Dr. Davisson diagnosed James with Attention Deficit Disorder (ADD), and Dr. Ferrell prescribed him Adderall. The Nicholsons further alleged that between February 2003 and February 2008, appellants were negligent by continuing "to provide medical care and treatment" to James and "by providing continued prescriptions for

---

[1] They both sued in their individual capacities, and Patricia also sued as next friend of the Nicholsons' minor children.

[2] They also sued Dr. Ana Mercau and Dr. Clifford Charles "Chuck" Ferrell, deceased, and any unknown administrator of his estate. Dr. Mercau is not a party to this appeal, and the Nicholsons nonsuited their claims related to Dr. Ferrell.

Adderall," despite collectively having seen James in the office only two or three times during that five-year period. The Nicholsons claimed that this negligence caused James to develop Adderall addiction and psychosis.

Their specific allegations of negligence faulted appellants for the following:

- Failing to timely and properly diagnose James;

- Diagnosing James with ADD;

- Continuing to diagnose James with ADD;

- Failing to adequately or properly assess, monitor, and treat James; and

- Continuing to prescribe Adderall without timely and properly seeing James for medical and psychiatric evaluation.

The Nicholsons also generally alleged respondeat superior liability as follows:

> Whenever in this Petition it is alleged that a Defendant did any act or thing, it is meant that said Defendant, or its agents, servants, employees or representatives did such act or thing and that at the time such act or thing was done, it was done with full authorization or ratification of that Defendant or was done in the normal routine or course and scope of employment of that Defendant or its agents, servants, employees or representatives. [3]

---

[3] ... Appellants' answers did not raise any affirmative defenses as to the respondeat superior allegations. *See Springer v. Johnson*, 280 S.W.3d 322, 334 (Tex. App.—Amarillo 2008, no pet.).

3

The Nicholsons filed two expert reports on March 23, 2009:  one from a psychologist, Dr. Swen Helge, and the other from an internal medicine specialist, Dr. Lige B. Rushing, Jr.  All three appellants objected to both reports. After a hearing, the trial court overruled all of appellants' objections to the reports and refused to dismiss the claims against each of the appellants. Appellants appeal the trial court's refusal to dismiss the Nicholsons' claims against them.

## Issues on Appeal

Dr. Davisson and the Clinic each bring three issues challenging the adequacy of both Dr. Helge's and Dr. Rushing's expert reports as to causation and each expert's qualifications to render expert opinions on the standard of care applicable to Dr. Davisson and the manner in which he allegedly breached that standard of care.  Dr. Self brings a single issue challenging the adequacy of Dr. Rushing's report, alleging specifically that the report fails to show that he is qualified to give an opinion as to the applicable standard of care and that his opinion on causation is conclusory.

## Standard of Review

A trial court's decision on a motion to dismiss under section 74.351 is subject to an abuse of discretion standard.  *See, e.g., Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Craig v.*

*Dearbonne*, 259 S.W.3d 308, 310 (Tex. App.—Beaumont 2008, no pet.); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Lal v. Harris Methodist Fort Worth*, 230 S.W.3d 468, 471 (Tex. App.—Fort Worth 2007, no pet.). Additionally, a trial court's decision on whether a physician is qualified to offer an expert opinion in a health care liability claim is reviewed under an abuse of discretion standard. *See Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242. A trial court does not abuse its discretion if it commits a mere error in judgment. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

Applicable Law

In a health care liability claim, a claimant must serve on each defendant an expert report that addresses standard of care, liability, and causation no later than the 120th day after the claim is filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j) (Vernon Supp. 2009); *Barber v. Mercer*, No. 02-08-00079-CV, 2009 WL 3337192, at *3 (Tex. App.—Fort Worth Oct. 15, 2009, no pet.). If an expert report has not been served on a defendant within the 120-day period, then on the motion of the affected defendant, the trial court must dismiss the claim with prejudice and award the defendant reasonable attorney's fees and costs. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *Barber*, 2009 WL 3337192, at *3. A report "has not been served" under the statute when it has been physically served but it is found deficient by the trial court. *Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008); *Barber*, 2009 WL 3337192, at *3. When no report has been served because the report that was served was found to be deficient, the trial court has discretion to grant one thirty-day extension to allow the claimant the opportunity to cure the deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Barber*, 2009 WL 3337192, at *3.

A report is deficient (therefore subjecting a claim to dismissal) when it "does not represent an objective good faith effort to comply with the definition

of an expert report" in the statute. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*); *Barber*, 2009 WL 3337192, at *3. While the expert report "need not marshal all the plaintiff's proof," *Palacios*, 46 S.W.3d at 878, it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Barber*, 2009 WL 3337192, at *3.

To qualify as a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875; *Barber*, 2009 WL 3337192, at *3. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Palacios*, 46 S.W.3d at 879; *Barber*, 2009 WL 3337192, at *3. The information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879; *Barber*, 2009 WL 3337192, at *3. When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document

7

alone. *Palacios*, 46 S.W.3d at 878; *Barber*, 2009 WL 3337192, at \*3; *see Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Barber*, 2009 WL 3337192, at \*3; *see Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Bowie Mem'l Hosp.*, 79 S.W.3d at 53).

## Analysis

### Standard of Care[4]

The Clinic and Dr. Davisson each contend that (1) the Helge report does not demonstrate that Dr. Helge is qualified to offer an expert opinion regarding the accepted standards of care for the diagnosis, care, or treatment of ADD, the prescribing of Adderall to treat adult ADD, Adderall addiction, Adderall psychosis, or all of these; (2) the Helge report fails to set forth the specific standard of care applicable to each of the doctors and the Clinic; and (3) the report fails to set forth the specific manner in which the doctors and Clinic employees failed to meet the applicable standard of care. They, along with Dr.

---

[4] Because the Nicholsons provided two reports to satisfy their expert report obligations as to all defendants, and because some of appellants' challenges to the reports are interdependent, we will review appellants' issues by topic rather than in chronological order.

Self, also challenge Dr. Rushing's qualifications to opine to the standard of care applicable to each of them.

Dr. Helge's Qualifications

An expert report concerning standards of care "authored by a person who is not qualified to testify . . . cannot constitute an adequate report." *See Moore v. Gatica*, 269 S.W.3d 134, 140 (Tex. App.—Fort Worth 2008, pet. denied); *In re Windisch*, 138 S.W.3d 507, 511 (Tex. App.—Amarillo 2004, orig. proceeding); *see Ehrlich v. Miles*, 144 S.W.3d 620, 624–25 (Tex. App.—Fort Worth 2004, pet. denied). To be qualified, an expert must satisfy the requirements in section 74.402. Tex. Civ. Prac. & Rem. Code Ann. § 74.402 (Vernon 2005); *Terry A. Leonard, P.A. v. Glenn*, 293 S.W.3d 669, 678 (Tex. App.—San Antonio 2009, pet. filed). Specifically, section 74.402(b)(1) requires an expert to have been

> practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose.

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b)(1).

As to Dr. Helge, the Clinic and Dr. Davisson specifically contend that Dr. Helge is not practicing health care in a field of practice involving the same type of care or treatment as that delivered by the doctors in this case, that Dr. Helge

9

does not have knowledge of the accepted standards of care for health care providers for such matters, and that he is not qualified on the basis of training or experience to offer an expert opinion on the accepted standards of care.

Dr. Helge has been a practicing clinical psychologist for the past thirty-seven years in addition to being a practicing forensic psychologist for the past twenty-four years. Although the Clinic and Dr. Davisson claim that Dr. Helge's most recent expertise is in forensic psychology as opposed to clinical psychology, Dr. Helge's report and curriculum vitae show that at the time he authored the report, he had a private clinical practice in psychology and was a member of the division of clinical psychology and division of psychotherapy of the American Psychological Association. Although many of his more recent diplomates and papers involved forensic psychology, nothing in his report or curriculum vitae shows that he was practicing forensic psychology to the exclusion of clinical psychology.[5] Thus, we conclude that the trial court did not abuse its discretion by overruling this objection to Dr. Helge's qualifications. *See id.*; *Benish v. Grottie*, 281 S.W.3d 184, 206 (Tex. App.—Fort Worth 2009, pet. denied); *Foster v. Zavala*, 214 S.W.3d 106, 113 (Tex. App.—Eastland

---

[5] ... Additionally, in November 2007, Dr. Helge co-presented a workshop entitled, "It Looks Like ADHD, It Sounds Like ADHD, It's Not ADHD." *See Foster v. Richardson*, No. 02-09-00216-CV, 2009 WL 5191363, at *(will fill in, pg #s not on WL yet) (Tex. App.—Fort Worth Dec. 31, 2009, no pet.).

2006, pets. denied) (holding, based on legislative history and statutory construction principles, that the statute does not require that expert be in same field of practice, only a field involving the same type of care or treatment).

Dr. Davisson and the Clinic also challenge Dr. Helge's knowledge of the accepted standard of care for ADD treatment, care, and diagnosis, including the use of Adderall in such treatment.  According to the Clinic, although Dr. Helge states that he has had the occasion to see and evaluate patients who have had Adderall prescribed for them in the regular course of his psychological practice, he does not explain how seeing those patients, or how being familiar with the pharmacology of amphetamines and their adverse effects, "provides him with the knowledge of the accepted standards of care for providing diagnosis, care, and treatment to an adult diagnosed with ADD and prescribed Adderall, or Adderall addiction or Adderall psychosis."

Section 74.402(c) states that

[i]n determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

11

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(c). Dr. Helge meets both of these requirements; he is certified by the State of Texas as a psychologist, and he treats patients who have been prescribed Adderall. Although Dr. Helge does not prescribe Adderall himself, his report states that he has practical knowledge of what is customarily and usually done by a practitioner under circumstances similar to those confronting the defendant doctors. *See Ehrlich*, 144 S.W.3d at 625; *see also Barber*, 2009 WL 3337192, at \*6, 8.

Dr. Davisson is a psychologist, as is Dr. Helge. Appellees allege that after diagnosing James with ADD and recommending a prescription for Adderall, as evidenced by Dr. Davisson's signature along with Dr. Ferrell's on the notes setting forth the diagnosis and prescription recommendation,[6] Dr. Davisson failed to provide any followup care or evaluation of James. Having treated patients in his clinical psychology practice who have been prescribed Adderall, Dr. Helge is thus at least qualified to opine to the ongoing standard of care for a psychologist who has made a diagnosis for which the patient was prescribed Adderall by a medical doctor. *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[6] Dr. Helge's report notes that "[t]here is a page in the records dated 02/26/03 that simply states to whom it may concern, [James] (patient) was diagnosed with attention deficit disorder on 02/26/03 (date) at the . . . Clinic. My recommendation is prescription for Adderall (medication). Below that are two signatures. The first is Chuck Ferrell, M.S., D.O., general/family practice and Harvey G. Davisson, Ph.D., psychologist."

12

§ 74.402(c); *Terry A. Leonard, P.A.*, 293 S.W.3d at 680; *Grindstaff v. Michie*, 242 S.W.3d 536, 542 (Tex. App.—El Paso 2007, no pet.); *Burrell*, 230 S.W.3d at 760–61.

Dr. Davisson and the Clinic also contend that the Helge report does not demonstrate that Dr. Helge is qualified on the basis of training or experience to offer an expert opinion on the accepted standards of care in that he does not explain *how* his experience or training, which they claim is overwhelmingly in the field of forensic psychology, provides him the necessary training or experience with the omissions alleged here: involving the diagnosis, care, and treatment of an adult diagnosed with ADD and prescribed Adderall, Adderall addiction, or Adderall psychosis. However, the Clinic and Dr. Davisson fail to read the report and Dr. Helge's curriculum vitae as a whole. Dr. Helge's curriculum vitae shows that he is a practicing psychologist and that he has treated patients who are taking Adderall prescribed by a doctor. As such, he meets the requirements of section 74.402 as to the Clinic's principal, Dr. Davisson, at least. Tex. Civ. Prac. & Rem. Code Ann. § 74.402; *see Barber*, 2009 WL 3337192, at *6 (holding that court must not view any one part of expert report or curriculum vitae in isolation).

13

Dr. Helge's Articulation of Standard of Care

Dr. Davisson and the Clinic further claim that the Helge report fails to provide a fair summary of Dr. Helge's opinions regarding the standard of care for each defendant and how each of them specifically breached that standard of care. Dr. Helge opined as follows regarding the standard of care:

a. The standard of care requires that [James's] psychologist, Dr. Harvey G. Davisson, provide that level of care and treatment that a reasonably prudent psychologist would provide under the same or similar circumstances. The prescription of controlled substances and particularly amphetamines on a chronic basis requires careful monitoring and supervision. This means that the patient should be seen at a minimum of every 180 days and depending on the clinical status, possibly more often in order to meet the standard of care.

b. The standard of care requires . . . [James] to be seen and examined every 180 days and assessed for adverse effects from the amphetamines such as amphetamine psychosis, including any change in sociological factors.

c. The standard of care also requires that appropriate clinical records be kept in accordance with acceptable professional standards. These records need to, in order to meet the standard of care, clearly reflect the patient's clinical status, the medicines being received, his emotional or psychological status, his response to treatment or lack of response and evidence of any adverse effects or the absence of adverse effects must be documented.

Dr. Davisson and the Clinic contend that because the report goes on to state that "the care rendered by the Davisson Clinic, its employees, and Harvey G. Davisson, Ph.D. failed to meet the standard of care . . . [in that] the Davisson Clinic, its employees, and Harvey G. Davisson, Ph.D. failed to examine

14

and assess . . . [James] every 180 days in [an] appropriate timely manner," it does not delineate between the standards of care applicable to the various defendants.  But as we have stated, Dr. Helge is a psychologist, like Dr. Davisson, and he articulates the standard of care for a psychologist, specifically Dr. Davisson, in his report.  Thus, he clearly articulates the standard of care as it relates to Dr. Davisson.  Because the Nicholsons' claims against the Clinic are based on respondeat superior, and, thus, through the alleged negligence of Dr. Davisson as well as Dr. Self, the report is therefore not deficient for failing to set forth a standard of care as to anyone other than Dr. Davisson.  *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008); *Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.); *see also Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 295 (Tex. App.—Fort Worth 2008, pet. denied).

Moreover, the same reasoning applies to Dr. Helge's articulation of the breach of the standard of care, which provides a fair summary as to Dr. Davisson:  as a psychologist monitoring a person for whom he had diagnosed as having ADD and who he knew was being prescribed Adderall,[7] Dr. Davisson

---

[7] Although it is unclear who initially prescribed the Adderall because both Dr. Davisson's and Dr. Ferrell's signatures follow the prescription, it is clear that Dr. Davisson acquiesced in the prescription.

15

failed to examine James every one hundred eighty days for signs of adverse effects from the amphetamines, including social factors. It is undisputed that Dr. Helge's summary of the notes and records in James's file shows that there are no entries indicating Dr. Davisson examined James after the initial diagnosis. And because the claims against the Clinic are based solely on respondeat superior, including through the alleged negligence of Dr. Davisson, Dr. Helge's inclusion of the Clinic in his articulation of Dr. Davisson's breach of the standard of care does not fail to inform Dr. Davisson of his specific conduct that breached the standard of care. *See*, *supra*, page 15.

Accordingly, we conclude and hold that the trial court did not abuse its discretion by overruling Dr. Davisson's and the Clinic's objections to Dr. Helge's report based on his qualifications and articulation of the standard of care as to their claim that Dr. Davisson failed to "adequately or properly assess, monitor, and treat James."

Dr. Rushing's Qualifications

The Clinic and Dr. Davisson likewise challenge Dr. Rushing's qualifications to give an expert opinion on the standard of care applicable to Dr. Davisson. They further contend that his report is deficient as to Dr. Davisson because it only sets forth a standard of care for Dr. Self, Dr. Mercau, and the Clinic, rather than Dr. Davisson, and because it fails to set forth the specific

manner in which Dr. Self, Dr. Mercau, and the Clinic's employees failed to meet the applicable standard of care. Dr. Self also challenges Dr. Rushing's qualifications to opine as to an applicable standard of care.

To be an "expert" on the departure from a physician's standard of care, a person must be a physician who

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A), § 74.401(a) (Vernon 2005). In determining whether a physician is qualified on the basis of training or experience, courts must consider whether the physician who completed the report (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim, and (2) is actively practicing medicine in rendering medical care services relevant to the claim. *Id.* § 74.401(c). In other words,

> there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. . . . [T]he proponent of the testimony has the burden to show that the expert possesses

17

special knowledge as to the very matter on which he proposes to give an opinion.

*Ehrlich*, 144 S.W.3d at 625 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152–53 (Tex. 1996)); *see Barber*, 2009 WL 3337192, at *4. For this reason, the offered report (along with the physician's curriculum vitae) must generally demonstrate that the expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Ehrlich*, 144 S.W.3d at 625 (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)); *see* Tex. R. Evid. 702; *Barber*, 2009 WL 3337192, at *4.

However, "there are certain standards of medical care that apply to multiple schools of practice and any medical doctor." *Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Therefore, a physician "who is not of the same school of medicine [as the defendant] . . . is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant." *Ehrlich*, 144 S.W.3d at 625; *see also Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ).

18

Appellants contend that the Rushing report does not show that Dr. Rushing is qualified to offer an expert opinion regarding the accepted standards of care applicable to each of them because it does not show that he is familiar with "the specific issues involved in the claim." Specifically, they contend that he is not practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the doctors, that he does not have knowledge of the accepted standards of care regarding ADD, Adderall prescription, or Adderall psychosis, and that he is not qualified on the basis of training or experience to offer an expert opinion regarding those standards.

Dr. Rushing's curriculum vitae shows that he is board certified in internal medicine, geriatrics, and rheumatology and is an attending physician at Presbyterian Hospital in Dallas. His report states that he has been practicing medicine since he graduated from medical school in 1951 and has provided primary medical care for more than 10,000 patients in a hospital setting and "many more than that" in an office setting. Dr. Rushing also states that he is familiar with the pharmacology of amphetamines and the adverse effects they produce. He also offers,

> In the regular course of my medical practice I have occasion to see and evaluate patients who have had Adderall prescribed for them for attention deficit disorder. I have three such patients *currently* in my practice who are receiving Adderall prescribed by the psychiatrist for their attention deficit disorder. I see these patients

19

for their regular medical problems and provide their primary medical care.   [Emphasis added.]

Dr. Rushing's report and curriculum vitae show that he was (a) actively and currently practicing medicine at the time it was written, (b) has actually treated and was currently treating patients being prescribed Adderall specifically for ADD, and (c) is board certified in internal medicine.  Thus, he meets the requirements set forth in section 74.401(a) and (c) for being qualified to render an opinion as to the standard of care applicable to the treatment of a person diagnosed with ADD and being prescribed Adderall.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401(a), (c); *Terry A. Leonard, P.A.*, 293 S.W.3d at 677; *cf. Barber*, 2009 WL 3337192, at *8 (holding that anesthesiologist who had participated in numerous similar surgeries and had observed proper padding and positioning technique as part of surgical *team* was qualified to provide expert report as to standard of care applicable to general surgeon).

Appellants contend that because Dr. Rushing is not the person who actually prescribed the Adderall to his patients, he is not qualified to opine regarding the standard of care for this claim.  But the statute does not go so far.  Dr. Rushing's report shows he is actively involved in the management of care for persons who are being prescribed ADD medication, specifically Adderall; this experience is sufficient to allow him to opine on the applicable

20

standard of care in a claim that relates to the medical supervision and management of persons with such a diagnosis and prescriptions.[8] *See San Jacinto Methodist Hosp.*, 256 S.W.3d at 813–14. Thus, we conclude and hold that Dr. Rushing is qualified to opine on the applicable standard of care for a doctor who has not only prescribed Adderall to a patient, but who also manages the care of a patient for whom that doctor has prescribed Adderall.[9]

Dr. Rushing's Articulation of Standard of Care

Next, Dr. Davisson and the Clinic contend that the Rushing report fails to set forth the specific standard of care applicable to each of the defendants and the Clinic as well as the specific manner in which each breached the standard of care.

Because Dr. Rushing is an internal medicine specialist, his report was offered primarily to articulate the standard of care for Dr. Self and Dr. Mercau, although he did opine as to the standard of care applicable to Dr. Davisson. Because we have already determined that Dr. Helge's report

---

[8] ... Thus, contrary to Dr. Self's contention, this case is distinguishable from this court's opinion in *Collini v. Pustejovsky*, 280 S.W.3d 456, 465–66 & n.6 (Tex. App.—Fort Worth 2009, no pet.).

[9] ... Moreover, because Dr. Helge's report is sufficient as to the standard of care for Dr. Davisson (and the Clinic, by virtue of the respondeat superior allegations), there is no need for Dr. Rushing's report to articulate a separate standard of care for them or to opine as to how Dr. Davisson may have breached the standard of care.

21

sufficiently articulated the standard of care and breach as to Dr. Davisson, we will focus on whether Dr. Rushing sufficiently articulated the standard of care and breach as to Dr. Self.

Dr. Rushing opined as follows:

1.  (Applicable standard of care):
    a.  The standard of care requires that . . . *Angela D. Self, M.D.* . . . provide that level of care and treatment that a reasonable prudent physician would provide under the same or similar circumstances.  The prescription of controlled substances and particularly amphetamines on a chronic basis requires careful monitoring and supervision.  This means that the patient should be seen at a minimum of every 90 days and depending upon the clinical status, possibly more often in order to meet the standard of care.
    b.  The standard of care requires that [James] be seen and examined every 90 days and assessed for adverse effects from the amphetamines such as amphetamine psychosis, elevated blood pressure, weight loss, and assessment of the cardiovascular system.
    c.  The standard of care also requires that appropriate clinical records be kept in accordance with acceptable professional standards. These records need to, in order to meet the standard of care, clearly reflect the patient's clinical status, the medicines being received, his emotional or psychological status, his response to treatment or lack of response and evidence of any adverse effects or the absence of adverse effects must be documented.

2.  The manner in which the care rendered by the . . . Clinic and its employees *and Angela D. Self, M.D.* . . . failed to meet the standard of care and the conduct that is called into question here is set forth below.  The . . . Clinic and its employees *and the physicians, Angela D. Self, M.D.* . . .

22

failed to examine [James] every 90 days in [an] appropriate timely manner. During the entire approximately 5 years, as far as I can tell, he was seen twice at the clinic and possibly a third time. It is incredible that this man received amphetamines for approximately 5 years with only three physician visits over the entire period of time. The clinic and the doctors were simply running a mail order prescription mill dispensing controlled substances in an inappropriate and incorrect way as described above. This conduct by the . . . Clinic and its employees, *and Angela D. Self, M.D.* . . . is clearly below the accepted standards of medical care. The medical records are such that one cannot be certain what was going on other than that he was receiving mail order prescriptions. [Emphasis added.]

This same standard of care was repeated, specifically mentioning only Dr. Self, in a later section of the report.

According to the Clinic,

Rushing fails to specifically describe the standard of care applicable to Dr. Self, Dr. Mercau, and the . . . Clinic, i.e. what steps should have been taken and when. Rushing fails to state when [James] allegedly should have been examined and what assessments, testing, or evaluation allegedly should have been done and what such testing and evaluation allegedly would have shown. Rushing fails to set forth when during the medical care he believes assessments should have been done and then, if such assessments had been performed, how these assessments would have changed the patient's condition.

Again, the inclusion of the Clinic in the articulation of the standard of care is not fatal because all of the claims against the Clinic are based on respondeat superior and therefore flow from the alleged breach of the standard of care by its agent or employees, in this case, the doctors. And although Dr. Self and Dr.

23

Mercau are both mentioned in one part of the articulation of the standard of care, the standard of care is later ascribed to each of them separately in different paragraphs. *See Foster v. Richardson*, No. 02-09-00216-CV, 2009 WL 5191363, at *8 (Tex. App.—Fort Worth Dec. 31, 2009, no pet.) (holding report not insufficient "merely because it contains some collective statements regarding actions that both doctors should have taken while they independently cared for Richardson"); *Romero v. Lieberman*, 232 S.W.3d 385, 391–92 (Tex. App.—Dallas 2007, no pet.) (holding that standard of care need not be listed separately in report when same standard applies to each health care provider). Thus, the conduct of Dr. Self that the report calls into question is clear: (a) Dr. Self's alleged failure to see James every ninety days during the six month period she prescribed him Adderall to assess him "for adverse effects from the amphetamines such as amphetamine psychosis, elevated blood pressure, weight loss, and assessment of the cardiovascular system" and (b) her alleged failure to keep appropriate medical records during that same time period. Although Dr. Rushing's report does not marshal all the Nicholsons' proof, it is not required to do so. *Palacios*, 46 S.W.3d at 878. Reading the report in its entirety, it at least provides a fair summary of Dr. Rushing's opinions as to the standard of care applicable to Dr. Self and the manner in which the care she

24

rendered James failed to meet that standard. *See Barber*, 2009 WL 3337192, at *6.

Based on the above analysis, we conclude and hold that the trial court did not abuse its discretion by determining that Dr. Helge's and Dr. Rushing's reports, when read together, represent a good faith effort to comply with the statutory definition of an expert report as to Dr. Davisson and Dr. Self regarding the Nicholsons' allegations of failure to adequately or properly assess, monitor, and treat James and the continuing prescription of Adderall without timely and properly seeing James for medical and psychiatric evaluation. Additionally, because the Nicholsons' allegations against the Clinic are based on respondeat superior through the alleged negligence of both Dr. Self and Dr. Davisson, we conclude and hold that the trial court did not abuse its discretion by determining that the reports are also adequate as to the Clinic regarding those claims.

Causation

The Clinic and Dr. Davisson challenge both Dr. Helge's and Dr. Rushing's reports as to causation; Dr. Self challenges Dr. Rushing's causation opinion as well. According to Dr. Davisson and the Clinic, Dr. Helge is not qualified to give an opinion on causation under section 74.403(a) because he is a clinical and forensic psychologist, not a physician. Section 74.403(a) provides as follows:

25

[I]n a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a).

"Physician" is defined as a person who is

(1)    licensed to practice medicine in one or more states in the United States; or

(2)    a graduate of a medical school accredited by the Liaison Committee on Medical Education or the American Osteopathic Association only if testifying as a defendant and that testimony relates to that defendant's standard of care, the alleged departure from that standard of care, or the causal relationship between the alleged departure from that standard of care and the injury, harm, or damages claimed.

*Id.* § 74.001(a)(23) (Vernon 2005).  The Nicholsons admit that Dr. Helge is not a physician under the statute, but they contend that he does not need to be qualified to render an opinion on causation because the causation opinion is provided by Dr. Rushing's report and that the two reports together constitute a sufficient report as to standard of care and causation.

Section 74.351(i) explicitly contemplates the use of multiple expert reports in the same case:

Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report

26

by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation.

*Id.* § 74.351(i). Accordingly, if Dr. Rushing's report is adequate as to causation, then Dr. Helge's qualifications to opine on causation are of no import.

After providing a summary of James's medical records that he reviewed, and concluding that James "had seen the physician only three times over the last seven years during the time that he was receiving Adderall," Dr. Rushing opined that

> James . . . suffered an addiction to amphetamines due to the failure to examine him every 90 days. He also developed an amphetamine psychosis and *his behavior was such as described earlier to be disruptive such that he lost his employment that he was a threat to his wife, and a threat to himself and required extensive treatment as a result of his amphetamine addiction and amphetamine psychosis*. All of this was a result of improper amphetamine prescription and improper supervision. Had [he] been examined every 90 days *his addiction would have been diagnosed and treated in a timely manner thereby preventing his addiction from advancing to psychosis*[.]" [Emphasis added.]

Dr. Davisson and the Clinic contend that this opinion is conclusory in that it "does not set forth any facts demonstrating a mechanism that supports his conclusion" and that it requires them to infer the facts supporting the conclusion. But they ignore the detailed factual summary set forth in Dr.

27

Rushing's report. Dr. Rushing clearly details the doctors' alleged omissions—failure to see James on a timely, regular basis—as well as the behavior which James ultimately engaged in and his ultimate diagnosis. Dr. Rushing thus clearly opines that if the doctors had seen James in the office, they would have observed the behavioral manifestations Dr. Rushing described. Moreover, as the Clinic can act only through its employees or agents, the Nicholsons' allegations against the Clinic are likewise supported by sufficient factual detail and are therefore not conclusory. *See Benavides v. Garcia*, 278 S.W.3d 794, 799 (Tex. App.—San Antonio 2009, pet. denied) (holding that causation section of expert medical report was not conclusory when read in context of entire report).

Dr. Davisson and the Clinic contend that even if Dr. Rushing's causation opinion is sufficient as to the medical doctors, it is nevertheless insufficient as to Dr. Davisson because it fails to specifically discuss or link Dr. Davisson's failure to meet the standard of care described in Dr. Helge's report with James's resulting injury. However, after describing that injury in his report,[10]

---

[10] "He also developed an amphetamine psychosis and his behavior was such as described earlier to be disruptive such that he lost his employment that he was a threat to his wife, and a threat to himself and required extensive treatment as a result of his amphetamine addiction and amphetamine psychosis."

Dr. Rushing states specifically that the injury was "a result of improper amphetamine prescription *and improper supervision*." [Emphasis added.] To fulfill the requirements of section 74.351(i) by supplementing Dr. Helge's report as to Dr. Davisson, Dr. Rushing was not required to mention Dr. Helge's exact description of the standard of care applicable to Dr. Davisson, especially when, as here, that standard of care is accurately described as a failure to properly supervise or monitor, which is precisely the conduct that Dr. Rushing implicates as causing James's injuries. *See Packard v. Guerra*, 252 S.W.3d 511, 526–27 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding that we must review multiple reports "in the aggregate" to determine if they are adequate as to liability and causation); *Perez v. Salinas*, No. 13-08-00192-CV, 2008 WL 4981565, at *3 (Tex. App.—Corpus Christi Nov. 25, 2008, pet. denied) (mem. op.). Therefore, we conclude and hold that the trial court did not abuse its discretion by overruling appellants' objections as to the causation part of Dr. Rushing's report.

And because Dr. Rushing's report is sufficient as to causation, it is of no import that Dr. Helge is not qualified to render an opinion on causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i); *Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 570–72 (Tex. App.—Dallas 2007, pet. denied) (holding expert report requirement fulfilled in claim against nurse by providing expert

29

report of nurse as to standard of care and expert report of medical doctor as to causation); *cf. Walgreen Co. v. Hieger*, 243 S.W.3d 183, 187 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (Seymore, J., dissenting).[11]

Having determined that the trial court did not abuse its discretion by overruling appellants' objections to Dr. Helge's and Dr. Rushing's reports as to their claims regarding failure to properly and adequately assess, monitor, and treat James and the continuing prescription of Adderall without timely and proper evaluation, and, thus, by refusing to dismiss those claims against them, we overrule the Clinic's and Dr. Davisson's three issues and Dr. Self's two issues as to those claims. However, neither Dr. Helge's report nor Dr. Rushing's report faults Dr. Davisson's or Dr. Self's conduct as to the other claims alleged in the Nicholsons' petition: the failure to timely and properly diagnose James and the initial and continuing diagnosis of James with ADD. Accordingly, we conclude and hold that neither report is adequate as to those claims and we therefore sustain appellants' issues to the extent they complain

---

[11] Because we determine that it was not necessary that Dr. Helge's report provide an opinion on causation, we need not address the Clinic's and Dr. Davisson's contentions that Dr. Helge's opinion as to causation is conclusory. *See* Tex. R. App. P. 47.1; *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 809 (Tex. App.—Fort Worth 2007, pet. denied).

about the reports as to those claims.  *See Richardson*, 2009 WL 5191363, at *7.

## Conclusion

Having overruled all of each appellants' issues as to the failure to adequately monitor and the continuing prescription of Adderall without adequate supervision claims, we affirm the trial court's order as to those claims.  But having sustained appellants' issues as to the Nicholsons' other claims—the failure to timely and properly diagnose James and the initial and continuing diagnosis of James with ADD—we reverse the trial court's order as to those claims and remand those claims to the trial court to consider whether to grant a thirty-day extension to cure the deficiency.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *Richardson*, 2009 WL 5191363, at *11.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON and WALKER, JJ.

DELIVERED:  March 25, 2010