ACCEPTED
03-14-00765-CV
4240890
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/22/2015 3:07:21 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00765-CV

IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/23/2015 3:07:21 PM
JEFFREY D. KYLE
Clerk

## NANCY JO RODRIGUEZ,

*Appellant*,

**vs.**

## THE WALGREENS COMPANY AND SARA ELIZABETH MCGUIRE,

*Appellees*

On Appeal from the 419th Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-14-GN-000903
The Honorable Gus J. Strauss, Judge Presiding

## BRIEF FOR APPELLANT

L. Todd Kelly
Texas Bar No. 24035049
The Carlson Law Firm, P.C.
11606  N. IH-35
Austin, Texas 78753
Tel. 512-346-5688
Fax 512-719-4362
Tkelly@carlsonattorneys.com

Counsel for Nancy Jo Rodriguez

## ORAL ARGUMENT REQUESTED

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellant Nancy Jo Rodriguez provides the following complete list of all parties and counsel to the trial court's order that forms the basis of this appeal:

Nancy Jo Rodriguez
***Appellant***

The Walgreen Company
Sara Elizabeth McGuire
***Appellees***

L. Todd Kelly
Texas Bar No. 24035049
The Carlson Law Firm, P.C.
11606 N. IH-35
Austin, Texas 78753
Telephone: 512-346-5688
Facsimile: 512-719-4362
Tkelly@carlsonattorneys.com
***Trial and Appellate Counsel for Plaintiff Nancy Jo Rodriguez***

Cynthia Day Grimes
State Bar No. 11436600
Strasburger & Price, LLP
2301 Broadway
San Antonio, Texas 78215
Telephone: 210-250-6000
Facsimile: 210-250-6100
Cynthia.Grimes@strasburger.com
***Trial Counsel for Appellees The Walgreens Co. And Sara Elizabeth McGuire***

Judith R. Blakeway

Strasburger & Price, LLP
State Bar No. 02434400
2301 Broadway
San Antonio, Texas 78215
Telephone: 210-250-6000
Facsimile: 210-250-6100
Judith.Blakeway@strasburger.com
***Appellate Counsel for The Walgreen Co. and Sara Elizabeth McGuire***

Chris Knudsen
Texas Bar No. 24041268
Nicole Andrews
Texas Bar No. 00792335
Serpe Jones Andrews Callender & Bell, PLLC
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
Telephone: 713-452-4400
Facsimile: 713-452-4499
cnudsen@serpejones.com
nandrews@serpejones.com
***Counsel for Vivek Goswami, M.D. and Austin Heart, PLLC*** (not parties to this appeal)

Missy Atwood
Texas Bar No. 01428020
Germer Beaman & Brown, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone: 512-472-0288
Facsimile: 512-472-0721
matwood@germer-austin.com
***Counsel for Defendant St. David's Health Care Partnership*** (not a party to this appeal)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ......................................................2

INDEX OF AUTHORITIES...................................................................5

STATEMENT OF THE CASE..................................................................6

ISSUES PRESENTED.......................................................................6

STATEMENT OF FACTS ....................................................................7

SUMMARY OF THE ARGUMENT ...........................................................8

ARGUMENT ............................................................................9

    A. DR. HARDY IS QUALIFIED TO OPINE ON THE ISSUES
    PERTINENT TO THIS CASE ........................................................11

    B. DR. BREALL'S REPORT LINKS NANCY'S CONTINUED
    PRADAXA THERAPY TO HER INJURIES .............................................14

    C. THE TRIAL COURT ABUSED ITS DISCRETION BY
    GRANTING WALGREENS AND MCGUIRE'S MOTION
    TO DISMISS .....................................................................17

PRAYER ..............................................................................19

CERTIFICATE OF COMPLIANCE..........................................................20

CERTIFICATE OF SERVICE ..............................................................20

APPENDIX

    Trial Court Order ...............................................................A

    Statutes ........................................................................B

# INDEX OF AUTHORITIES

CASE LAW

*Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878-879 (Tex. 2001) ......................................................................................10, 17

*Blan v. Ali,* 7 S.W. 3d 741, 746 (Tex. App. - Houston [14th Dist.] 1999, no writ)......................................................................................................12

*Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) ..................................17

*Broders v. Heise*, 924 S.W. 2d 148 (Tex. 1995).......................................................12

*Davisson v. Nicholson*, 310 S.W.3d 543, 558 (Tex. App.—Fort Worth 2010, no pet.) ............................................................................................14

*Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ....................................................................14

STATUTES

Texas Civil Practice and Remedies Code § 74.351 ................................9, 14, 16, 17

Texas Civil Practice and Remedies Code § 74.402.................................................11

## STATEMENT OF THE CASE

This case involves a claim for damages arising out of medical malpractice (CR 4). It was originally filed in the 419th District Court of Travis County, Texas. *Id.* The reports of Dr. J. Chad Hardy and Dr. Jeffrey A. Breall were filed and served with Plaintiff's Original Petition on March 26, 2014 (CR 13). Appellees The Walgreen Company and Sara Elizabeth McGuire filed Objections to the reports of Dr. Hardy and Dr. Breall on May 6, 2014, and later filed a Motion to Dismiss based on these objections on September 10, 2014 (CR 64 and CR 212). A hearing on Appellees' objections and Motion to Dismiss and Plaintiff's countermotion for the filing of frivolous objections was held on October 29, 2014 (CR 210). On December 3, 2014, the Honorable Visiting Judge Gus J. Strauss signed an order dismissing The Walgreen Company and Sara Elizabeth McGuire (CR 375). Appellant filed her Notice of Appeal of this order (Supp. CR 3).

## ISSUES PRESENTED

1. Dr. J. Chad Hardy, Pharm.D., M.S. is qualified to render an opinion on Appellees' breach of the applicable standard of care, given his statements within the four corners of his report setting forth his qualifications, together with his extensive knowledge and experience in processing and handling prescriptions; and

2. The expert reports of Dr. J. Chad Hardy, Pharm.D., M.S. and Dr. Jeffrey A. Breall, M.D., which clearly apprise Appellees of the claims asserted against them

6

and inform the court that the claims are not frivolous, are sufficient under the Texas Civil Practice and Remedies Code when considered in the aggregate.

## STATEMENT OF FACTS

On February 10, 2012, 53-year-old Nancy Jo Rodriguez is sent by her psychiatrist to Seton Northwest Hospital Emergency Center (Seton) for evaluation of confusion. Although Nancy suffers from bipolar disorder and has a history of confusion, she is able live independently at this time (*see* CR 44). While at Seton, Nancy is referred to Vivek Goswami, M.D. (Dr. Goswami), a cardiologist with Austin Heart, PLLC (Austin Heart). Dr. Goswami treats her for atrial fibrillation by placing Nancy on Pradaxa, an anticoagulant or "blood thinner". Pursuant to the medical records relied on by Dr. Jeffrey A. Breall, Nancy is discharged home from Seton with instructions to follow-up with David Kessler, M.D. (Dr. Kessler), who also practices with Austin Heart. Based on Nancy's follow-up visit, Dr. Kessler orders that her Pradaxa therapy be stopped.

Pursuant to the records upon which Dr. Hardy relied in forming his opinions, including a copy of the image of the prescription filled by Appellees, refills of Pradaxa were not signed by any physician. Despite having no authorization to refill Nancy's Pradaxa medication, Appellees continue to refill her prescription for the drug (CR 41). Appellees make no effort to protect Nancy, a person with a history of confusion and mental health issues, from a potentially dangerous drug known to

7

have an array of severe side effects (CR 43-44). Due in part to the omissions of Appellees, Nancy continues to take Pradaxa over the course of the next 4 months.

On July 2, 2012, Nancy's son and daughter-in-law find Nancy in her apartment, covered in bruises, blood, and feces. Her medical records from Seton Northwest indicate she is admitted to the ICU at Seton and diagnosed with severe coagulopathy, or a severe impairment of her blood's ability to clot. She is treated for gastrointestinal bleeding, hypotension, and kidney injury (CR 44). Nancy is eventually discharged and cared for at Ashwood Assisted Living, an extended-care facility (CR 43). Her discharge summary from Seton Northwest indicates her primary discharge diagnosis is "1. Acute blood loss anemia secondary to acute gastrointestinal bleed secondary to hypercoagulable state while on Pradaxa."

## SUMMARY OF THE ARGUMENT

The trial court abused its discretion when it dismissed Rodriguez's claims against Appellees The Walgreen Company (Walgreens) and Sara Elizabeth McGuire (McGuire). To comply with the requirements of Chapter 74 of the Texas Civil Practice and Remedies Code, Rodriguez filed and served the expert reports of Dr. J. Chad Hardy and Dr. Jeffrey A. Breall with her Original Petition. Together, these reports demonstrate that Walgreens and McGuire breached multiple duties to Nancy by continuing to dispense the drug Pradaxa to Nancy without verifying whether it should be continued with her physician and despite the fact the

8

prescribing physician indicated it should be discontinued. Because Nancy continued to take Pradaxa, she suffered kidney injury, gastrointestinal bleeding, and hypotension which have resulted in her long-term clinical demise.

Dr. Hardy is a licensed pharmacist who is qualified to opine on the standard of care applicable to Walgreens and McGuire because of his extensive experience in pharmacy operations, including the proper processing and handling of prescriptions to ensure patient safety. Dr. Breall, a board-certified cardiologist, then opines on the causal relationship between Nancy's continued Pradaxa therapy and her injuries. When these reports are read in the aggregate, it is clear that Rodriguez has more than satisfied the requirements of Chapter 74. She has apprised Walgreens and McGuire of specific conduct called into question, and she has demonstrated that her claims have merit. For these reasons, the trial court abused its discretion in granting Walgreens and McGuire's Motion to Dismiss.

## ARGUMENT

Because this is a case involving permanent, devastating damages resulting from medical neglect, Rodriguez must meet the procedural requirements of Texas Civil Practice and Remedies Code §§ 74.351 – 74.403. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) mandates that a plaintiff provide an expert report that sets forth a "fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the

9

physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." However, the report "need not marshal all the plaintiff's proof" as long as it provides the expert's opinion on each element listed in the statute. *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878-879 (Tex. 2001). The Texas Supreme Court has ruled that:

> "In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 878-79.

Thus, the only requirements of the statute with regard to an expert report is that the report (1) give the defendant notice of the conduct upon which the plaintiff is basing her claim, and (2) provide the court with sufficient information to determine that the plaintiff's claim has merit. *Id*.

The trial court abused its discretion when it granted Walgreens and McGuire's Motion to Dismiss. To meet her Chapter 74 expert report requirements, Rodriguez served the expert reports of Dr. J. Chad Hardy, Pharm.D., M.S. and Dr. Jeffrey A. Breall, M.D. Dr. Hardy, a licensed Texas pharmacist, opines on the standard of care applicable to Walgreens and McGuire as well as their breach of that standard. Dr. Breall, a medical doctor and board-certified cardiologist, then

10

provides an opinion on the causal link between their breach of the standard of care and Nancy's injuries. When considered in the aggregate, these reports more than satisfy Rodriguez's Chapter 74 expert report requirements.

## A. DR. HARDY IS QUALIFIED TO OPINE ON THE ISSUES PERTINENT TO THIS CASE.

Dr. Hardy is qualified to opine on the standard of care applicable to Walgreens and McGuire because of the nature of his practice as well as his knowledge, experience, and training regarding the specific issues giving rise to this claim. Civil Practice and Remedies Code § 74.402(b) provides that a person may qualify as an expert if the person:

> (1) is practicing in a field of practice that involves the *same type of care or treatment* as that delivered by the defendant health care provider at the time the testimony is given or was practicing that type of care when the claim arose;

> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standard of care. (emphasis added)

Courts have further determined that the test for whether a medical expert is qualified to render opinions in a case is "rooted in the expert's training, experience and knowledge of the standards applicable to the *illness, injury or condition involved in the claim." Blan v. Ali,* 7 S.W. 3d 741, 746 (Tex. App. - Houston [14th Dist.] 1999, no writ). The test of an expert's qualifications is not whether the

11

expert has the same practice as the Defendant; instead, the offering party must establish that the expert has "knowledge, skill, experience, training or education *regarding the specific issue before the Court* which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W. 2d 148 (Tex. 1995).

Dr. Hardy received his Doctorate of Pharmacy from the University of Texas in 2000 and is a licensed pharmacist in Texas (CR 39). At the time of the negligent acts of Appellees, Dr. Hardy worked in Pharmacy Operations Management and as a Pharmacy Consultant (CR 13). His expert report and *curriculum vitae* demonstrate his extensive knowledge of the standard of care relevant to pharmacy operations, including the applicable standards for the "refilling and processing of the prescription [Pradaxa]" (CR 40). Dr. Hardy's expert report and CV plainly demonstrate that his practice focuses on the health care services about which he opines: pharmacy operations, including the refilling and processing of prescriptions. It is Appellees' refilling and processing of Pradaxa without authorization from Nancy's physician that fell below the standard of care in this case, contributing to Nancy's overdose and resulting in the significant personal injuries and damages she suffered.

Dr. Hardy has extensive experience in the operations and standards that govern the allegations which form the basis of Rodriguez's claims. However, in

their objections to Rodriguez's expert report, Walgreens and McGuire complained that Dr. Hardy's CV "fails to demonstrate that he was engaged in the practice of pharmacy in 2012" and that "there is no indication that he is actively practicing health care in rendering health care services relevant to the claim" (CR 69). Walgreens and McGuire disregard the clear evidence that demonstrates Dr. Hardy's qualifications to opine on the issues central to Rodriguez's claims of negligence.

Dr. Hardy's field of practice focuses on pharmacy operations and the standards by which pharmacies must abide to provide the appropriate care for their patients. The operations of a pharmacy, including the proper refilling and processing of prescriptions, are central to the care and treatment provided by both Dr. Hardy's practice and the practice of Walgreens and McGuire. At the time of the events made the basis of this case, Dr. Hardy was extensively involved in pharmacy operations, using his "clinical knowledge to ensure proper effective and timely patient care" during his management of 16 pharmacies (CR 13). Dr. Hardy's work focuses on the handling of medications – such as Pradaxa – by pharmacies and pharmacists such as Walgreen and McGuire. He is more than qualified to opine on the standard of care in a case concerning the improper handling of a prescription.

13

**B. D**R**. B**REALL**'**S **R**EPORT **L**INKS **N**ANCY**'**S **C**ONTINUED **P**RADAXA **T**HERAPY TO **H**ER **I**NJURIES.

Dr. Hardy opines that Nancy's continued Pradaxa therapy was the result of Walgreens and McGuire's processing and refilling the drug without her physician's authorization. As he explains in his report, pharmacists "have a duty to contact the prescribing physician if patient harm is possible to validate the prescription." By dispensing Pradaxa to Nancy without authorization from her physician, Walgreens and McGuire breached this standard as well as the other duties set forth by Dr. Hardy. Dr. Breall then opines on the causal connection between Nancy's continued Pradaxa therapy – which resulted in part from Appellees' breach of the standard of care, as provided in Dr. Hardy's report – and her injuries.

Pursuant to TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6), an expert report must set out "the causal relationship" between the breach and "the injury, harm, or damages claimed." When a plaintiff serves multiple expert reports, the reports should be considered in the aggregate to determine whether her expert report requirements have been met. See *Packard v. Guerra*, 252 S.W.3d 511, 526 (Tex. App.—Houston [1th Dist.] 2008, pet. denied); *Davisson v. Nicholson*, 310 S.W.3d 543, 558 (Tex. App.—Fort Worth 2010, no pet.). In their Motion to Dismiss, Walgreens and McGuire alleged that Dr. Breall's expert report "fails to comment

14

on any causal connection between an act or failure to act by Walgreens or McGuire which was a cause of plaintiff's injuries." However, as discussed above, the reports of Dr. Breall and Dr. Hardy should be considered in the aggregate to determine whether Rodriguez has met the expert report requirements. Walgreens and McGuire were responsible for continuing to dispense Pradaxa to Nancy, and Dr. Breall links her continued Pradaxa therapy to the injuries she suffered.

In his report, Dr. Hardy sets forth the specific conduct of Appellees which constitute departures from the standard of care. Specifically, Dr. Hardy states that Walgreens and McGuire breached their standard of care by continuing to dispense Pradaxa after the prescribing physician indicated it should be discontinued and by failing to verify if that prescription should be continued with the prescribing physician. Dr. Breall then opines in his expert report on the causal relationship between Nancy's injuries and the departures from the standard of care set forth in Dr. Hardy's report. Dr. Breall provides that the "[f]ailure to discontinue the use of Pradaxa was a direct cause of her subsequent acute admission to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding – known side effects of the over-use of Pradaxa" (CR 44). Furthermore, Dr. Breall states that "Ms. Rodriguez's hospitalization would never have needed to take place" if Pradaxa therapy would have been stopped "as ordered by Dr. Kessler". *Id.* These acts and failures are, incidentally, the same as those identified by Dr. Hardy as

15

breaches in the standard of care applicable to Walgreens and McGuire. Dr. Breall attributes Nancy's injuries to these acts and failures.

When the reports of Dr. Hardy and Dr. Breall are read in the aggregate, it is evident that Rodriguez has addressed each element of her claims against Appellees as required by Chapter 74. Thus, Rodriguez has set forth a good-faith effort to comply with her expert report requirements. She has addressed each required element of her cause of action by providing the reports of both a qualified pharmacist (Dr. Hardy) and a qualified medical doctor (Dr. Breall).

In their Motion to Dismiss, Walgreens and McGuire further complain that Rodriguez failed to offer a report that addresses the damages claimed in her petition because the report does not address the damages she is suffering and will suffer in the future. However, § 74.351(r)(6) requires only that the expert set forth the causal relationship between the breach and some "injury, harm, or damages claimed". Dr. Breall provides in his report that Nancy from "acute admission to the hospital with hypotension, acute kidney injury, and apparent gastrointestinal bleeding" – known side effects of the over-use of Pradaxa that Dr. Breall attributes to her continued Pradaxa therapy. Chapter 74 does not require that Dr. Breall detail all of Plaintiff's damages beyond giving an opinion as to this causal relationship, and certainly the current and future damage elements claimed by Rodriguez in her report are beyond the scope of a Chapter 74 expert report. Rodriguez has

16

sufficiently fulfilled the expert report requirements by setting forth the injuries and harm suffered by her as a result of Defendants' negligent acts.

**C. THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING WALGREENS CO. AND McGUIRE'S MOTION TO DISMISS.**

The trial court abused its discretion when it granted Defendants' Motion to Dismiss. An appellate court generally reviews a trial court's decision to dismiss under TEX. CIV. PRAC. & REM. CODE § 74.351 for an abuse of discretion. *Bowie Mem. Hospital v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court abuses its discretion if it acts "arbitrarily or unreasonably or without reference to any guiding rules or principles." *Id*.

Pursuant to TEX. CIV. PRAC. & REM. CODE § 74.351, plaintiffs must provide a timely expert report that demonstrates a "good-faith effort" to set forth a "fair summary" of the applicable standard of care, the manner in which the health care provider breached the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001). To satisfy this requirement, "a plaintiff need not present evidence in the report as if it were actually litigating the merits…the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. A trial court abuses its discretion in granting a motion to dismiss based on § 74.351 if there is

17

no reasonable basis for the court to determine that the report fails to set forth the requisite good-faith effort. See *Wright*, 79 S.W.3d at 53. Here, the trial court acted arbitrarily, unreasonably, and without reference to the above rules and principles governing the expert report requirements by granting Defendant's Motion to Dismiss.

To comply with the expert report requirements of Chapter 74, Plaintiff served the reports of both Dr. Hardy and Dr. Breall. Dr. Hardy, a licensed Texas pharmacist, thoroughly sets forth his opinion on the standard of care applicable to Appellees and the manner in which the care rendered by Appellees failed to meet that standard. Among other acts and omission, Dr. Hardy opines that Appellees continued to dispense Pradaxa after the prescribing physician indicated it should be discontinued and failed to verify if the prescription should be continued in violation of the standard of care. Dr. Breall, a medical doctor who is board certified in cardiology, then opines on the causal relationship between Nancy's continued Pradaxa use and her injuries, which include hospitalization with acute kidney injury, hypotension, and gastrointestinal bleeding. Dr. Hardy is not qualified to opine on causation because he is not a medical doctor. Dr. Breall is not qualified to opine on the standard of care of a pharmacist because he is not a pharmacist. However, when these reports are read in the aggregate, they apprise Walgreens and McGuire of the specific conduct called into question by Rodriguez's claims and

18

demonstrate that Rodriguez's claims have merit. Because the expert reports of Dr. Breall and Dr. Hardy set forth a good-faith effort to provide a fair summary of their opinions on each element of Rodriguez's claim, the trial court abused its discretion by granting the Motion to Dismiss.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant Nancy Jo Rodriguez respectfully requests that the Court reverse the decision of the trial court granting Walgreens and McGuire's Chapter 74 Motion to Dismiss. Rodriguez also requests that she be awarded her reasonable attorney's fees and costs as allowed by Chapter 74 of the Texas Civil Practice and Remedies Code. Rodriguez further prays for such other relief to which she may be justly entitled.

Respectfully submitted,

L. Todd Kelly
Tkelly@carlsonattorneys.com
State Bar No. 24035049
**THE CARLSON LAW FIRM, P.C.**
11606 N. IH-35
Austin, Texas 78753
(512) 346-5688
(512) 719-4362  (Fax)

/s/ L. Todd Kelly
L. Todd Kelly

**ATTORNEY FOR
NANCY JO RODRIGUEZ**

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's Brief contains 3,264 words, based on Microsoft Word's word-count function.

/s/ L. Todd Kelly
L. Todd Kelly

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following in accordance with the Texas Rules on the 22nd day of February, 2015.

***Electronic Transmission:***

Cynthia Day Grimes
Cynthia.Grimes@strasburger.com
Judith R. Blakeway

Judith.Blakeway@strasburger.com
Strasburger & Price, LLP
2301 Broadway
San Antonio, Texas 78215

Chris Knudsen
Cknudsen@serpejones.com
America Tower
2929 Allen Parkway, Suite 1600
Houston, Texas 77019
Tel. (713) 452-4400
Fax. (713) 452-4499

Missy Atwood
Matwood@germer-austin.com
Germer, Beaman & Brown, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701



/s/ L. Todd Kelly
L. Todd Kelly

APPENDIX A

TRIAL COURT ORDER

Filed in The District Court
of Travis County, Texas

DEC 03 2014

At_____ᴘ.ᴍ.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-000903

| | | |
|---|---|---|
| NANCY JO RODRIGUEZ | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | |
| | § | |
| THE WALGREEN COMPANY, SARA | § | TRAVIS COUNTY, TEXAS |
| ELIZABETH MCGUIRE, AUSTIN HEART | § | |
| PLLC, ST. DAVID'S HEALTH CARE | § | |
| PARTNERSHIP, DAVID KESSLER, MD, | § | |
| AND VIVEK GOSWAMI, MD | § | |
| | § | |
| DEFENDANT. | § | 419TH JUDICIAL DISTRICT |
| | § | |

## ORDER

On the 29th of October, 2014, the Court considered the Chapter 74 Motion to Dismiss and for Attorneys' Fees filed by Walgreen Co. and Sara Elizabeth McGuire. After considering the motion, any responses thereto, arguments of counsel, and all other relevant matters of record, the Court is of the opinion that the motion is meritorious and should be GRANTED IN PART and DENIED IN PART. It is therefore,

ORDERED that Walgreen Co. and Sara Elizabeth McGuire's Chapter 74 Motion to Dismiss is granted. It is therefore,

ORDERED that all of Plaintiff Nancy Jo Rodriguez' claims and causes of action, as well as those that could have been asserted, against Walgreen Co. and Sara Elizabeth McGuire are hereby dismissed with prejudice. It is further,

ORDERED that Walgreen Co. and Sara Elizabeth McGuire's request for attorneys' fees is DENIED.

All other relief not granted herein with respect to the the Chapter 74 Motion to Dismiss and for Attorneys' Fees filed by Walgreen Co. and Sara Elizabeth McGuire is Denied.

1632631.4/SPSA/87282/0138/110614

375

Signed this __3__ ~~NOVEMBER~~ *December,* 2014.

HONORABLE GUS J. STRAUSS
PRESIDING JUDGE

**APPROVED AS TO FORM:**

CYNTHIA DAY GRIMES
State Bar No. 11436600
**STRASBURGER & PRICE, LLP**
2301 Broadway
San Antonio, Texas 78215-1157
(210) 250-6000 – Main
(210) 250-6100 – Fax
(210) 250-6003 – Direct
Cynthia.Grimes@strasburger.com
*Attorneys for Defendants Walgreen Co. and Sara Elizabeth McGuire*

L. TODD KELLY
State Bar No. 24035049
ELIZABETH A. RHODES
State Bar No. 24083726
**THE CARLSON LAW FIRM, PC**
11606 N. IH 35
Austin, Texas 78753
(512) 346-5688 – Telephone
(512) 719-4362 – Fax
tkelly@carlsonattorneys.com
erhodes@carlsonattorneys.com
*Attorneys for Plaintiff*

1632631.4/SPSA/87282/0138/110614

376

APPENDIX B

STATUTES

Sec. 74.351.  EXPERT REPORT.  (a)  In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.  The date for serving the report may be extended by written agreement of the affected parties.  Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

(b)  If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1)  awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider;  and

(2)  dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c)  If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.  If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

[Subsections (d)-(h) reserved]

(i)  Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving

an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation.  Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

(j)  Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k)  Subject to Subsection (t), an expert report served under this section:

(1)  is not admissible in evidence by any party;

(2)  shall not be used in a deposition, trial, or other proceeding;  and

(3)  shall not be referred to by any party during the course of the action for any purpose.

(l)  A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

[Subsections (m)-(q) reserved]

(r)  In this section:

(1)  "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

(2)  "Claim" means a health care liability claim.

[(3) reserved]

(4)  "Defendant" means a physician or health care provider against whom a health care liability claim is asserted.

The term includes a third-party defendant, cross-defendant, or counterdefendant.

        (5)  "Expert" means:

        (A)  with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

        (B)  with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

        (C)  with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

        (D)  with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;  or

        (E)  with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

        (6)  "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s)  Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1)  written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2)  depositions on written questions under Rule 200, Texas Rules of Civil Procedure;  and

(3)  discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

(t)  If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u)  Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

Added by Acts 2003, 78th Leg., ch. 204, Sec. 10.01, eff. Sept. 1, 2003.
Amended by:
     Acts 2005, 79th Leg., Ch. 635 (H.B. 2645), Sec. 1, eff. September 1, 2005.
     Acts 2013, 83rd Leg., R.S., Ch. 870 (H.B. 658), Sec. 2, eff. September 1, 2013.

Sec. 74.402.  QUALIFICATIONS OF EXPERT WITNESS IN SUIT AGAINST HEALTH CARE PROVIDER.  (a)  For purposes of this section, "practicing health care" includes:

(1)  training health care providers in the same field as the defendant health care provider at an accredited educational institution;  or

(2)  serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

(b)  In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1)  is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2)  has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;  and

(3)  is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

(c)  In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1)  is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2)  is actively practicing health care in rendering health care services relevant to the claim.

(d)  The court shall apply the criteria specified in Subsections (a), (b), and (c) in determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care but may depart from those criteria if, under the circumstances, the court determines that there is good reason to admit the expert's testimony.  The court shall state on the record the reason for admitting the testimony if the court departs from the criteria.

(e)  This section does not prevent a health care provider who is a defendant, or an employee of the defendant health care provider, from qualifying as an expert.

(f)  A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the 21st day after the date of the witness's deposition.  If circumstances arise after the date on which the objection must be made that could not have been reasonably anticipated by a party before that date and that the party believes in good faith provide a basis for an objection to a witness's qualifications, and if an objection was not made previously, this subsection does not prevent the party from making an objection as soon as practicable under the circumstances.  The court shall conduct a hearing to determine whether the witness is qualified as soon as practicable after the filing of an objection and, if possible, before trial.  If the objecting party is unable to object in time for the hearing to be conducted before the trial, the hearing shall be conducted outside the presence of the jury.  This subsection does not prevent a party from examining or cross-examining a witness at trial about the witness's qualifications.

Added by Acts 2003, 78th Leg., ch. 204, Sec. 10.01, eff. Sept. 1, 2003.

Sec. 74.403.  QUALIFICATIONS OF EXPERT WITNESS ON CAUSATION IN HEALTH CARE LIABILITY CLAIM.  (a)  Except as provided by Subsections (b) and (c), in a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

(b)  In a suit involving a health care liability claim against a dentist, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed if the person is a dentist or physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

(c)  In a suit involving a health care liability claim against a podiatrist, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed if the person is a podiatrist or physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

(d)  A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the 21st day after the date of the witness's deposition.  If circumstances arise after the date on which the objection must be made that could not have been reasonably anticipated by a party before that date and that the party believes in good faith provide a basis for an objection to a witness's qualifications, and if an objection was not made previously, this subsection does not prevent the party from making an objection as soon as practicable under the circumstances.  The court shall conduct a hearing to determine

whether the witness is qualified as soon as practicable after the filing of an objection and, if possible, before trial.  If the objecting party is unable to object in time for the hearing to be conducted before the trial, the hearing shall be conducted outside the presence of the jury.  This subsection does not prevent a party from examining or cross-examining a witness at trial about the witness's qualifications.

Added by Acts 2003, 78th Leg., ch. 204, Sec. 10.01, eff. Sept. 1, 2003.