**Gary GRINDSTAFF, D.P.M., Appellant,**

v.

**Sandra MICHIE, Appellee.**

**No. 08–06–00175–CV.**

Court of Appeals of Texas, El Paso.

Aug. 30, 2007.

Karen L. Landinger, Ray, Valdez, McChristian & Jeans, P.C., El Paso, TX, for Appellant.

Walter L. Boyaki, Miranda & Boyaki, El Paso, TX, for Appellee.

Before CHEW, C.J., McCLURE, and BARAJAS, C.J. (Ret.).

## OPINION

ANN CRAWFORD McCLURE, Justice.

In this case of "surgery gone awry," Dr. Gary Grindstaff appeals the denial of his motion to dismiss pursuant to the Texas Medical Liability and Insurance Improvement Act. For the following reasons, we affirm.

### FACTUAL SUMMARY

In 2002, Sandra Michie sought treatment from Dr. Grindstaff, a podiatrist, for bilateral heel and plantar foot pain. She suffered with the pain for about six years and had pursued several unsuccessful treatments, including over-the-counter medications, arch supports, Birkenstock shoes, and custom made functional orthotics. Dr. Grindstaff believed Michie suffered from recalcitrant plantar fasciitis and recommended treatment of physical modalities, plantar fascia stretching, and strapping. After three months, Michie's condition had not improved. Dr. Grindstaff then recommended simultaneous bilateral endoscopic plantar fasciotomies.

Following surgery on both feet, Michie's pain worsened. On October 29, 2004, she filed a health care liability suit alleging Dr. Grindstaff was negligent: (1) in performing a surgical procedure that was not indicated for her then existing condition and diagnosis, (2) for performing a surgical procedure that was not indicated to be performed bilaterally, (3) by failing to provide her with appropriate conservative treatment for an appropriate period of time prior to offering her surgery, and (4) by improperly performing bilateral plantar fasciotomies.

In support of her lawsuit, Michie filed an expert report by and *curriculum vitae* of Dr. Jefferson Cartwright, an orthopedic surgeon. He opined that Michie's post-operative complaints were the direct result of foot surgery that was neither warranted nor indicated. Dr. Grindstaff timely challenged the adequacy of Dr. Cartwright's report and filed a motion to dismiss. The trial court denied the motion and this appeal follows.

## JURISDICTION

In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a *curriculum vitae* of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.[1] Tex. Civ.Prac. & Rem.Code Ann. § 74.351(a)(Vernon 2005). An expert report is a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet those standards, and the causal rela-

tionship between that failure and the injury, harm, or damages claimed. Tex.Civ. Prac. & Rem.Code Ann. § 74.351(r)(6)(Vernon Supp.2006).

Under Section 74.351, there are two ways in which a report may be characterized as not having been served. First, the expert report was not **timely** served, *i.e.,* it was not served within 120 days after the date the claim was filed. *See* Tex.Civ. Prac.Rem.Code Ann. § 74.351(a); *id.* at § 74.351(b). Secondly, although the report was timely served, it was deficient. *See* Tex.Civ.Prac. & Rem.Code Ann. § 74.351(c). Dr. Grindstaff contends the report at issue was so fatally defective that it does not constitute a report at all.

Dr. Grindstaff sought relief pursuant to Section 74.351(a), (b), (*l*), and (r). The trial court denied relief sought under Section 74.351(b). A party may, via interlocutory appeal, challenge the order of a district court that denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351(c). *See* Tex.Civ. Prac. & Rem.Code Ann. § 51.014(a)(9)(Vernon Supp.2006). Because no extension of time was granted under subsection (c), we have interlocutory appellate jurisdiction to review the denial of the motion to dismiss. *Cayton v. Moore,* 224 S.W.3d 440, 443–44 (Tex.App.-Dallas 2007, no pet.); *see also Academy of Oriental Medicine, L.L.C. v. Andra,* 173 S.W.3d 184, 188 n. 7 (Tex.App.-Austin 2005, no pet.).

## STANDARD OF REVIEW

■ We review the denial of a motion to dismiss for an abuse of discretion.[2] *Mur-*

---

1. Michie's lawsuit was filed before the effective date of the 2005 amendment to Section

74.351(a). *See* Tex.Civ.Prac. & Rem.Code Ann. § 74.351 (Vernon Supp.2006).

*phy v. Mendoza,* 234 S.W.3d 23 (Tex.App.-El Paso 2007, no pet.); *Kendrick v. Garcia,* 171 S.W.3d 698, 703 (Tex.App.-Eastland 2005, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial judge has decided a matter within his discretionary authority in a different manner than we would does not constitute an abuse of discretion. *See id.* at 242.

## ALLEGED DEFICIENCIES OF THE REPORT

We begin by addressing the individual deficiencies raised by Dr. Grindstaff. While he lists ten issues for review, they may be answered in three segments: (1) Was Dr. Cartwright qualified to render an expert opinion regarding the care provided by Dr. Grindstaff?; (2) Did his report adequately set forth the applicable standard of care?; and (3) Did his report adequately address causation? If these questions are answered in the affirmative, then the report meets the statutory requirements of the Act as contained in Chapter 74 of the Texas Civil Practices and Remedies Code.

### Qualifications

First, Dr. Grindstaff contends Dr. Cartwright's report is deficient because Dr. Cartwright is not a podiatrist and he does not articulate how he is qualified to render an opinion on the standard of care applicable to a podiatrist. Dr. Grindstaff also contends Dr. Cartwright's *curriculum vitae* fails to indicate his training involving proper treatment for diseases of the feet.

A health care liability claim is defined as a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. Tex.Civ.Prac. & Rem.Code Ann. § 74.001(13). Under Chapter 74, a podiatrist is defined as a health care provider. Tex.Civ.Prac. & Rem.Code Ann. § 74.001(12)(A)(iii).

To qualify as an expert on the standard of care, Dr. Cartwright must meet the requirements of Section 74.402(b).[3] Tex. Civ.Prac. & Rem.Code Ann. § 74.351(r)(5)(B)(with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, "expert" means an expert qualified to testify under

---

**2.** In Dr. Grindstaff's reply brief, he suggests that we should review the issue *de novo.* Whether the abuse of discretion standard will apply under Section 74.351 is unclear. But in the absence of contrary authority, we will continue to apply an abuse of discretion standard. *Murphy v. Mendoza,* 234 S.W.3d 23, 2007 WL 108374 at *1 (Tex.App.-El Paso 2007, no pet.); *see Kendrick v. Garcia,* 171 S.W.3d 698, 703 (Tex.App.-Eastland 2005, pet. denied).

**3.** Dr. Grindstaff relies upon Section 74.351(r)(5)(E) as the basis for his argument

that Dr. Cartwright is unqualified to render an expert opinion regarding the standard of care. Section 74.351(r)(5)(E) does not outline the requirements for an expert to qualify to render an opinion on the standard of care. It defines what is required for an expert to testify as to the causal relationship between the breach of the standard of care and the injury. *See* Tex.Civ.Prac. & Rem.Code Ann. § 74.351(r)(5)(E). The applicable section relating to the qualifications of an expert to render an opinion on the standard of care is Section 74.351(r)(5)(B).

the requirements of Section 74.402). Section 74.402(b) states:

In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

Tex.Civ.Prac. & Rem.Code Ann. § 74.402(b)(1–3). To determine whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is: (1) certified by a licensing agency of one or more states of the United States or national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. Tex.Civ.Prac. & Rem.Code Ann. § 74.402(c)(1) & (2). The trial court may depart from the criteria if it determines there is good cause to admit the expert's testimony. Tex.Civ. Prac. & Rem.Code Ann. § 74.402(d). If the trial court so finds, it shall state on the record the reason for admitting the expert

testimony. Tex.Civ.Prac. & Rem.Code Ann. § 74.402(d). Such is not the case here.

### Practicing in Same Type of Health Care Field

■ Because Dr. Cartwright is an orthopedic surgeon, not a podiatrist, we must first determine whether he is practicing in a health care field involving the same type of care or treatment provided by Dr. Grindstaff. Tex.Civ.Prac. & Rem.Code Ann. § 74.402(b)(1); see Group v. Vicento, 164 S.W.3d 724, 730 (Tex.App.-Houston [14th Dist.] 2005, pet. filed). Podiatry is the treatment of any disease, disorder, physical injury, deformity, or ailment of the human foot by any system or method. See Tex.Occ.Code Ann. § 202.001(4)(Vernon 2004). Orthopedics is the "branch of medicine concerned with the correction or prevention of skeletal deformities, disorders, or injuries." Merriam–Webster Online at http://www.m-w.com/dictionary/orthopedics.

Dr. Cartwright is board certified in orthopedic surgery. He has treated many patients with plantar fasciitis and is familiar with the standard of care. Since Dr. Cartwright has experience in treating patients with plantar fasciitis, and Dr. Grindstaff diagnosed Michie as suffering from plantar fasciitis, Dr. Cartwright satisfies Section 74.402(b)(1).

### Knowledge of the Standard of Care

■ The second requirement for qualification is that Dr. Cartwright must have knowledge of the standard of care in the diagnosis or treatment of the illness, injury, or condition involved in Michie's claim. See Tex.Civ.Prac. & Rem.Code Ann. § 74.402(b)(2). Michie alleged that Dr. Grindstaff was negligent in one or more of the following ways:

- he performed a surgical procedure that was not indicated for her then existing condition and diagnosis;
- he performed a surgical procedure that was not indicated to be performed bilaterally;
- he failed to provide Michie with appropriate conservative treatment for an appropriate period of time prior to offering her surgery; and
- he improperly performed bilateral plantar fasciotomies.

Regarding his knowledge of the standard of care, Dr. Cartwright stated:

I have treated many patients with plantar fasciitis. I am familiar with the standard of care for the treatment of plantar fasciitis. As a result of my education, training, and clinical experience, I am qualified to render opinions of the standard of care issues in this case pertaining to the treatment of plantar fasciitis.

. . .

Ms. Michie's presentation very clearly suggested that her etiology was much more complex than a simple, uncomplicated case of plantar fasciitis. Yet, there is no documentation that Dr. Grindstaff considered any etiology other than plantar fasciitis. This failure to consider other etiologies given the complicated history and findings on examination represents a failure to diagnose, a complete disregard for nationally recommended standards for the diagnosis and management of heel and foot pain, and is not consistent with the standard of care.

Dr. Cartwright also noted that since Dr. Grindstaff had decided Michie's symptoms represented an uncomplicated case of plantar fasciitis, his management was inconsistent with the standard of care. Because Dr. Cartwright has knowledge of the standard of care for podiatrists regarding the diagnosis, care, or treatment of plantar fasciitis, he has satisfied Section 74.402(b)(2). *See* Tex.Civ.Prac. & Rem. Code Ann. § 74.402(b)(2).

### *Qualified on the Basis of Training or Experience*

■ Finally, the expert must be qualified on the basis of training or experience to offer an expert opinion regarding the accepted standard of care. *See* Tex.Civ. Prac. & Rem.Code Ann. § 74.402(b)(3). A trial court shall consider: (1) whether the expert is certified by a licensing agency or a national professional certifying agency or has other substantial training or experience in the area of health care relevant to the claim, and (2) whether the expert is actively practicing health care in rendering health care services relevant to the claim.

Dr. Grindstaff argues Dr. Cartwright is unqualified because his *curriculum vitae* does not include any training in the treatment of diseases of the foot or lectures on plantar fasciitis. Dr. Grindstaff also contends the report fails to mention whether Dr. Cartwright has ever performed an endoscopic plantar fasciotomy. Dr. Cartwright's *curriculum vitae* is lengthy. He is board certified in Orthopedic Surgery by the American Board of Orthopedic Surgery. He is licensed to practice medicine in Texas, Alabama, Georgia, and Louisiana. He has given numerous presentations and lectures on orthopedics, and has extensive experience as a military surgeon. Although his *curriculum vitae* does not specify whether he has lectured or written about plantar fasciitis, it clearly mentions that he has experience with patients who suffer from this condition.

Because Dr. Cartwright meets all three of the requirements of Section 74.402, he is qualified to render an opinion as to wheth-

er Dr. Grindstaff breached the standard of care.

### Standard of Care

In the next segment of issues, Dr. Grindstaff complains that Dr. Cartwright's report fails to state the applicable standard of care for the treatment of plantar fasciitis. Section 74.351 requires that an expert report provide a fair summary of the expert's opinions regarding the applicable standard of care. *See* Section 74.351(a). Identification of the standard of care is critical since "[w]hether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001). "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Id., citing Palacios v. American Transitional Care Centers of Texas, Inc.,* 4 S.W.3d 857, 865 (Tex.App.-Houston [1st Dist.] 1999)(Taft, J. dissenting).

Dr. Cartwright's report contains the following opinions:

- The conservative approach prescribed by Dr. Grindstaff was neither sufficiently inclusive nor of sufficient duration to warrant the surgical treatment performed.

- When Dr. Grindstaff noted that Ms. Michie had not improved after three months of 'physical medicine' performed in his office, instead of considering that this might not be a simple, uncomplicated case of plantar fasciitis, he instead dissuades the patient from casting, does not consider any other etiologies, and recommends surgery.

- Dissuading Ms. Michie from casting after only three months of documented conservative management is not appropriate and is not consistent with the standard of care.

- Failure to respond after three months of conservative management should have prompted an expanded differential diagnosis and consideration of other etiologies, yet no such considerations were given.

- Dr. Grindstaff recommends surgery but recommends that it be done bilaterally and that it be done endoscopically. Simultaneous bilateral plantar fascial releases are generally not recommended. Moreover, endoscopic plantar fascial release is absolutely contraindicated in the presence of symptoms which suggest nerve compression.

- Dr. Grindstaff did not adequately counsel Ms. Michie pre-operatively and therefore his informed consent was not sufficient. There is no evidence that Dr. Grindstaff specifically counseled Ms. Michie of the unique risks associated with endoscopic plantar fasciotomies over the more traditional and less risky open release. Dr. Grindstaff provides no documentation that the patient was informed that the procedures he was recommending were controversial, associated with a higher rate of complication, and when performed bilaterally simultaneously, were actually contraindicated. This is a failure to appropriately educate Ms. Michie and a failure to obtain adequate informed consent. This is not consistent with national standards and is not consistent with the standard of care.

While these statements are written in the negative rather than the positive, the report provides specific information about what Dr. Grindstaff should have done differently. *Palacios,* 46 S.W.3d at 880. It sets out what care was expected, but not

given. *Id., citing Palacios,* 4 S.W.3d at 865. We conclude that Dr. Cartwright has provided a fair summary regarding the applicable standard of care.

### Causation

■ Finally, Dr. Grindstaff claims the report either fails to address causation or, in the alternative, is merely conclusory. The report provides:

> The surgery is subsequently performed on both feet simultaneously and the patient ultimately achieves no benefit whatsoever and in fact feels that her condition is now worse. She is now unable to wear much of the footwear she states she was able to wear prior to surgery and that she is much less ambulatory than she was prior to surgery. She claims that her pain is much greater. I believe these complaints are a direct result of the surgery that was neither warranted or indicated.

Dr. Cartwright also states that Dr. Grindstaff's recommendation for bilateral surgery is generally not recommended and performing the surgery endoscopically was contraindicated since Michie presented with symptoms suggesting nerve compression. Dr. Cartwright also questioned whether Michie was informed that the procedures Dr. Grindstaff recommended were controversial and associated with a higher rate of complication.

■ To establish causation, an expert report must provide information linking the defendant's purported breach of the standard of care to the plaintiff's injury. *See Hutchinson v. Montemayor, M.D.,* 144 S.W.3d 614, 617 (Tex.App.-San Antonio 2004, no pet.); *see also Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex. 2002). An expert must also explain the basis of his statements to link his conclusions to the facts. *Wright,* 79 S.W.3d at 52.

According to Dr. Cartwright, Dr. Grindstaff breached the standard of care by recommending a surgical procedure that was contraindicated, controversial, had a high risk of complications, and should not have been performed bilaterally. Following surgery, Michie's pain and condition worsened. This was a "direct result of the surgery that was neither warranted or indicated." Such is generally the case where the negligence claim arises from surgery gone awry. All of Dr. Cartwright's opinions were "based on a reasonable degree of medical probability." Applying the appropriate standard of review, we perceive no abuse of discretion. We overrule each specific issue for review. Because the report complied with the requirements of the Act, we affirm the judgment of the trial court.

BARAJAS, C.J. (Ret.), sitting by assignment.