**Opinion issued October 16, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00068-CV

_____

**GARY HORNDESKI M.D., Appellant**

**V.**

**EVELYN GEORGE, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 115741-CV**

---

**MEMORANDUM OPINION**

The Texas Medical Liability Act (TMLA) requires health care liability claimants to timely serve an adequate expert report, authored by a qualified expert. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (r)(5). This interlocutory appeal turns on those requirements. *See id.* §§ 51.014(a)(9); 74.351(a), (r)(5).

On this record, the trial court did not abuse its discretion in overruling Appellant Dr. Gary Horndeski's objection to the expert's qualifications. Nor did the trial court abuse its discretion in denying the motion to dismiss based on the adequacy of the report. We therefore affirm.

## BACKGROUND

In 2019, Dr. Horndeski performed breast reduction surgery on Appellee Evelyn George.[1] George alleges that "[t]he surgery was a complete failure, leaving [her] terribly scarred and permanently disfigured." George alleges she suffered multiple infections and complications. And George later underwent two additional surgical revisions, seeking to fix the problems.

This culminated with George suing Dr. Horndeski, alleging that Dr. Horndeski breached the standard of care owed to George, causing her undue pain and suffering and rendering her scarred and deformed.[2]

George timely served upon Dr. Horndeski an expert report authored by Mark A. Schusterman, M.D., FACS, a board-certified plastic surgeon and Clinical

---

[1]    The facts recited are based on George's petition and expert report. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 221 n.1 (Tex. 2018); *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 58 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("The medical records are not before us, and we accept the factual statements in [the] expert report for the limited purpose of this appeal.").

[2]    George also brought fraud claims against Dr. Horndeski, alleging that he posted false and misleading information online and that he intentionally deceived George into believing his surgical method would result in minimal or invisible scars.

Professor of Plastic Surgery at Baylor College of Medicine. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a).

Dr. Horndeski timely objected to the report, arguing that Dr. Schusterman was not qualified to provide expert opinions and that the report failed to satisfy the statutory requirements. *See id.* After a hearing, the trial court overruled Dr. Horndeski's objections. Subsequently, Dr. Horndeski filed a motion for reconsideration and a motion to dismiss, reasserting his previous arguments.

The trial court denied Dr. Horndeski's motion for reconsideration and motion to dismiss. Dr. Horndeski then filed this interlocutory appeal. *See id.* § 51.014(a)(9).

## DISCUSSION

The TMLA requires health care liability claimants to timely serve an adequate expert report on each defendant. *See id.* § 74.351(a). The report must be issued by a qualified expert. *See id.* § 74.351(r)(5); *Pankaj v. Hernandez*, 695 S.W.3d 900, 919 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

**A.     The trial court did not abuse its discretion in concluding that Dr. Schusterman's report and curriculum vitae established his qualifications to opine in this case.**

Dr. Horndeski first argues that the trial court abused its discretion in overruling his objection to Dr. Schusterman's qualifications to opine in this case. It did not.

## 1. Expert Qualification Requirements

An expert report must be issued by a qualified "expert." *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (r)(5); *Pankaj*, 695 S.W.3d at 919. We review the trial court's ruling on the expert's qualifications for an abuse of discretion. *See Pankaj*, 695 S.W.3d at 919; *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 61, 63 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

Here, Dr. Horndeski challenges the expert's qualifications to opine on the standard of care. As applicable, the TMLA defines an expert as someone qualified to testify as an expert witness under section 74.401. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(A).

Section 74.401, in turn, states that, to be qualified as an expert on whether the defendant-physician departed from accepted standards of medical care, the expert must be a physician who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 74.401(a); *see Pankaj*, 695 S.W.3d at 919.

4

Section 74.401 further provides that, in determining whether an expert witness is qualified based on his training and experience, a trial court shall consider whether the witness "is board certified or has other substantial training or experience in an area of medical practice relevant to the claim," and whether he "is actively practicing medicine in rendering medical care services relevant to the claim." TEX. CIV. PRAC. & REM. CODE § 74.401(c).

"The critical inquiry is whether the expert's expertise goes to the very matter on which he or she is to give an opinion." *New Med. Horizons*, 575 S.W.3d at 62 (internal quotation marks omitted). The expert's qualifications must appear in the expert report or in the expert's accompanying CV. *Id.* at 61.

### 2. Dr. Schusterman's Qualifications

The trial court did not abuse its discretion in concluding that Dr. Schusterman's report and CV established his qualifications to opine on the standard of care applicable to Dr. Horndeski—a plastic surgeon performing breast plastic surgery.

To begin, Dr. Schusterman's report shows he was practicing medicine at the time of the report and at the time the claim arose. His report states: "I am a physician and currently practice medicine. I was practicing medicine at the time this claim arose." Thus, the first prong is satisfied. *Id.* § 74.401(a)(1) (expert must be a

physician who "is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose").

So too with the second and third prongs: his report and CV support the conclusion that he "has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the . . . condition involved [, breast plastic surgery]," and he "is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care." *Id.* § 74.401(a)(2)-(3).

In addition to being board-certified in plastic surgery (and general surgery), Dr. Schusterman's report and CV reflect extensive experience with plastic surgery— and with breast plastic surgery in particular. *See id.* § 74.401(a), (c). His report states the following, offering support to the trial court's conclusion:

> I have knowledge of the accepted standards of care for the diagnosis, care, treatment, and surgical intervention of breast implant surgery, breast lift surgery, breast implant exchange surgery, breast implant reconstructive surgery, and breast reconstructive surgery. I am qualified based on my training, education, and experience regarding these accepted standards of medicine and medical care. I am Board Certified in Plastic Surgery and General Surgery. I am also a Fellow of the American College of Surgery.
>
> * * * *
>
> I have published well over 200 peer-reviewed articles, book chapters, books, and abstracts. I have lectured internationally. During my tenure at [the University of Texas M.D. Anderson Cancer Center], I trained and supervised dozens of residents and fellow plastic surgeons. I was an American Board of Plastic Surgery Examiner for seven years. I am very familiar with all aspects of plastic surgery. Since 1997, I have been in private practice and continue to treat a wide spectrum of plastic

6

surgery needs and skin conditions, including surgical repairs post-plastic surgery and related invasive medical techniques necessary to repair poorly performed plastic surgery operations.

And notably, his CV states in relevant part that "[Dr. Schusterman] is a well-known authority" on "breast reconstruction," and that he "has pioneered techniques (such as the Free TRAM Flap technique)."[3]

As his report and CV further reflect, Dr. Schusterman has authored scientific articles and book chapters on breast plastic surgery. He has also served on the editorial boards of medical journals focused on breast and plastic surgery. For example, Dr. Schusterman currently serves as a Peer Reviewer for *Breast Implant Public Health Project, LLC* and has served on the editorial boards for the *Annals of Plastic Surgery*, *The Breast Journal*, and *Breast Diseases: A Year Book Quarterly*. Additionally, he has taught courses on breast plastic surgery and has presented at scientific meetings and educational symposia on the topic. For instance, he presented "Breast Implants: Facts and Fantasy in the Ongoing Controversy" at the Ninth International Congress on Breast Diseases and taught several courses on "Breast Reconstruction with the Free TRAM Flap" for the American Society of Plastic and Reconstructive Surgeons.

---

[3] The Free TRAM Flap procedure "uses a section of belly tissue that includes skin, fat and sometimes muscle for the new breast." *Breast reconstruction with flap surgery*, MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/breast-reconstruction-flap/about/pac-20384937#dialogId14410173 (last visited October 10, 2025).

On this record, we find no abuse of discretion in the trial court's conclusion that Dr. Schusterman was qualified to opine in this instance. *See New Med. Horizons*, 575 S.W.3d at 61–63; *see, e.g.*, *Kelly v. Rendon*, 255 S.W.3d 665, 673 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (doctor, who was board certified in both general surgery and plastic surgery and who had experience treating individuals with the same condition as patient, was qualified to render expert opinion on the standard of care for plastic surgeon where patient died from complications after tummy tuck procedure); *see also First Nobilis Surgical Ctr., LLC v. Phillips*, No. 14-18-00772-CV, 2019 WL 5617625, at *6–7 (Tex. App.—Houston [14th Dist.] Oct. 31, 2019, no pet.) (an infectious disease doctor was qualified to opine against plastic surgeon who performed breast implant surgery on a patient who developed breast infections after the surgery, because doctor had experience treating similar infections).

**B.     The trial court similarly did not abuse its discretion in denying Dr. Horndeski's motion to dismiss concerning the adequacy of the report.**

Dr. Horndeski next argues the trial court abused its discretion in failing to dismiss George's claims against Dr. Horndeski because Dr. Schusterman's report was deficient and failed to meet the statutory requirements concerning the standard of care, breach, and causation. On this record, the trial court did not abuse its discretion in denying the motion to dismiss on this basis.

8

### 1. TMLA's Expert Report Requirements

Having a qualified expert is not enough for these purposes. Under the TMLA, the plaintiff must also timely serve an adequate report.

The Texas Supreme Court has explained that "[a]n expert report is adequate if it represents an objective good faith effort to provide a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022) (cleaned up) (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6)); *accord Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714 S.W.3d 536, 543 (Tex. 2025).

"[O]ur inquiry is confined to the narrow question of whether [the expert's] report has made a good-faith effort to comply with the statutory requirements." *Bush*, 714 S.W.3d at 545. A report represents a good-faith effort if it "(1) informs the defendant of the specific conduct called into question and (2) provides a basis for the trial court to conclude the claims have merit." *Id.* at 543 (cleaned up). Put differently, a report meets this standard if it includes all required elements and "explains their connection to the defendant's conduct in a non-conclusory fashion." *Id.*

In analyzing a report's sufficiency, courts consider only the information contained within the four corners of the report. *Id.* at 544.

At this early stage of litigation, "[a] report is not required to marshal all the plaintiff's proof." *Id.* at 543–44 (internal quotation marks omitted). Nor is the question, at this stage, whether the expert's explanation is credible, reasonable, or believable; "those questions are to be litigated later in the proceedings." *Id.* at 545.

The ultimate question before us is whether the trial court abused its discretion in denying the defendant's motion to dismiss based on the adequacy of the expert report. *Id.* at 544. "[U]nder an abuse-of-discretion standard, close calls must go to the trial court." *E.D.*, 644 S.W.3d at 664 (cleaned up).

### 2. The trial court did not abuse its discretion in deeming the report adequate as to standard of care and breach.

"The standard of care is defined by what an ordinarily prudent healthcare provider would have done under the same or similar circumstances." *Nikko Cosmetic Surgery Ctr., Inc. v. Carroll*, No. 01-20-00752-CV, 2021 WL 3082911, at *3 (Tex. App.—Houston [1st Dist.] July 22, 2021, no pet.); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001). "An expert report adequately articulates the elements of standard of care and breach when it sets forth specific information about what the defendant should have done differently; that is, what care was expected, but not given." *Bush*, 714 S.W.3d at 544 (cleaned up).

10

In his 54-page report, Dr. Schusterman sets forth what he says is the standard of care applicable to Dr. Horndeski as a plastic surgeon with a patient presenting for a breast lift/reduction procedure. According to Dr. Schusterman, Dr. Horndeski was to:

- Perform the "breast lift/reduction [procedure] in such a way" that makes the resulting horizontal scarring "as unnoticeable as possible."

- Ensure that the placement of the nipple is "at or slightly above the inframammary fold."

- Perform the breast lift/reduction procedure in a technically appropriate manner "while carefully evaluating the possibility for blood flow interruption"—when faced with "signs of poor blood flow to the nipples," "a doctor is to take immediate action to prevent loss of the nipples and/or breast."

- Perform a breast lift/reduction procedure that the doctor is qualified and physically fit to perform.

- Perform a breast lift/reduction procedure that has been proven to be safe and effective by "completing medical studies or analysis" of the safety and effectiveness of the new unique surgical intervention while "evaluating risk factors" and considering past failures.

- Perform a breast lift/reduction procedure "that does not require extensive post-surgery reconstruction."

- Perform a breast lift/reduction procedure that results in symmetrical breasts.

With respect to breach, Dr. Schusterman opines that Dr. Horndeski failed to follow these standards of care. Dr. Schusterman opined that Dr. Horndeski breached the standards of care when Dr. Horndeski:

11

- "[F]ailed to perform the surgery in a manner where [George's] scars were unnoticeable or scarless"—instead leaving obvious and jagged scars.

- "[F]ailed to perform the surgery in a manner where the nipple line was appropriately placed" at or slightly above the inframammary fold—resulting in George's "nipple line being too high on the chest, especially on one side."

- Failed to take action to prevent poor blood flow to the nipples after "recogniz[ing] signs of poor blood flow to the nipples."

- Performed a surgery that he was physically unfit to perform, as he is visually impaired and unable to see more than a few feet.

- Performed a surgery not "accepted as safe and effective" by the plastic surgery community and "without performing or completing medical studies or analysis" on the safety and effectiveness of the new surgery method and without consideration of previous surgical failures—rather than performing "the inverted T (Wise Pattern)" method, which is the "more accepted methods of this type of surgery and would have resulted in better nipple placement."

- Failed to prevent "severe scarring and malformed breast shape."

- Failed to provide symmetrical breasts—resulting "in one breast being high on the chest wall while the other sagged."

In light of the foregoing, under applicable law, the trial court was within its discretion to conclude that Dr. Schusterman's report adequately describes the applicable standards of care and breach. "At this early point, whether the expert's explanation is credible, reasonable, or believable is irrelevant," and his "report is not required to marshal all the plaintiff's proof." *Bush*, 714 S.W.3d at 543, 545 (internal quotation marks omitted). So long as the report contains sufficient information to

fulfill the "good-faith effort" standard of "(1) inform[ing] the defendant of the specific conduct called into question and (2) provid[ing] a basis for the trial court to conclude the claims have merit," the report will be sufficient. *Id.* at 543 (cleaned up).

Our court's prior opinion in *Amjadi v. Mandujano* is instructive. No. 01-13-00479-CV, 2014 WL 554678 (Tex. App.—Houston [1st Dist.] Feb. 11, 2014, no pet.). There, the patient sued the doctor for negligence arising from a breast lift and tummy tuck. *Id.* at *1. We explained the report "clearly identifies the pertinent standards of care for a" breast lift by the expert's statement that "the ordinary standard of care for a [breast lift] is for a plastic surgeon to place breasts symmetrically, with normal nipple/areolar complex centralized on the breast mound." *Id.* at *4 (cleaned up). We further found that the report sufficiently addressed breach by stating "that '[the defendant] did not meet the standard of care' . . . because he 'failed to place the nipple areolar complex on the breast mound symmetrically,'" which fell "'below the accepted standards of care.'" *Id.*; *see also Nikko Cosmetic*, 2021 WL 3082911, at *4 (report adequately informed doctor of conduct in question and care that was expected where doctor performed a breast reduction surgery without patient's consent). That reasoning applies here.

Dr. Horndeski's arguments to the contrary do not change this conclusion.

First, he argues that Dr. Schusterman's opinions are biased, unreliable, and speculative because he reviewed only limited medical records and (according to Dr.

Horndeski) relied instead on irrelevant material, assumptions, inferences, and personal grievances. But the report says otherwise. In his report, Dr. Schusterman stated that, in forming his opinions, "he reviewed all currently available and pertinent records regarding" George, including George's medical records and history of prior breast surgeries, pre- and post-operative communications between George and Dr. Horndeski, pre- and post-operative photographs of George, as well as a personal evaluation of George.

Second, Dr. Horndeski argues that Dr. Schusterman's opinions regarding the standard of care and breach are conclusory because they fail to provide "any 'specific information' about what Appellant should have done differently." But Dr. Schusterman's report asserts, for example, that Dr. Horndeski should not have performed his procedure on George because he was not physically fit to perform it and because the procedure used—rather than "more accepted methods"—was an unknown experimental procedure not accepted by the plastic surgery community.[4] The report states that Dr. Horndeski should have taken action to prevent poor blood

---

[4]    Dr. Schusterman opines that "the inverted T (Wise Pattern)" method—as opposed to Dr. Horndeski's experimental "Horndeski Method" performed in this case—is the "more accepted methods of this type of surgery and would have resulted in better nipple placement." *See Baty v. Futrell*, 543 S.W.3d 689, 697 (Tex. 2018) ("The report's express reference to an alternative method provides some indication of what [defendant] should have done differently.").

flow to the nipples. And it states that he should have performed a breast lift/reduction procedure for George that resulted in unnoticeable scars, symmetrical breasts, and a nipple line situated at or slightly above the inframammary fold, without the need for extensive post-surgery reconstruction.

The trial court did not abuse its discretion in concluding that this report suffices at this stage. *See Bush*, 714 S.W.3d at 543–45; *see also Baty v. Futrell*, 543 S.W.3d 689, 696 (Tex. 2018) (report should identify the "specific conduct that [the expert] opines falls below the standard of care"); *Grindstaff v. Michie*, 242 S.W.3d 536, 543 (Tex. App.—El Paso 2007, no pet.) (although some opinions "are written in the negative rather than the positive, the report provides specific information about what [doctor] should have done differently").

### 3. The trial court also did not abuse its discretion in denying Dr. Horndeski's motion to dismiss as to causation.

The report must also be adequate as to causation. In this context, a "report is sufficient if it makes a good-faith effort to explain, factually, how proximate cause is going to be proven." *Bush*, 714 S.W.3d at 544 (cleaned up). "Proximate cause includes both cause in fact and foreseeability." *Id.* "Cause in fact is established by showing the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred." *Id.* (cleaned up). "An injury is foreseeable if its general character might reasonably have been anticipated." *Id.* (cleaned up).

Dr. Horndeski argues the report is deficient as to causation because it provides only conclusory opinions without a sufficient link to the facts and does not explain "how or why the alleged breaches of the standard of care caused the outcome or would have changed the outcome." We disagree.

In setting out the causal connection between the alleged breaches of the standards of care discussed above and the harm suffered by George, Dr. Schusterman opines in relevant part that:

- Dr. Horndeski breached the plastic surgeon's standards of care by "failing to perform the surgery in a manner where the nipple line" was properly placed "at or slightly above the inframammary fold," "causing the nipple line to be placed too high" on the chest, resulting in "permanent disfigurement."

- Dr. Horndeski breached the plastic surgeon's standards of care by failing "to perform the surgery in a manner where [George's] scars were unnoticeable or scarless," causing George to have now "obvious," "unsightly," "jagged," and "horrific scars on the chest wall" and breast, leaving her "permanently disfigured" with "malformed breast shape," which will require multiple revision operations to repair excessive residual scarring.

- Dr. Horndeski breached the plastic surgeon's standards of care by interrupting the blood flow to the breast and nipples and failing to take action to correct the surgical error, "causing tissue damage" to George's breast and resulting "in prolonged pain and suffering" for George.

- Dr. Horndeski breached the plastic surgeon's standards of care by failing to perform the surgery in a manner "whereby the breasts are symmetrical." "Dr. Horndeski's surgery resulted in one breast being high on the chest wall while the other sagged." This caused "asymmetrical breasts and nipples, which required revision surgery, and profound scarring."

16

On this record, the trial court did not abuse its discretion in denying the motion to dismiss on this basis. Dr. Schusterman's report opines that, had Dr. Horndeski performed the surgery as a reasonably prudent plastic surgeon would have, George would not have suffered the particular post-surgical complications and defects—the pronounced scarring, malformed breast shape, improper nipple placement, tissue damage, and asymmetrical breasts requiring multiple revisionary surgeries—and would not have needed to undergo future corrective surgeries. *See Horndeski v. Price*, No. 01-23-00602-CV, 2024 WL 1624858, at *12 (Tex. App.—Houston [1st Dist.] Apr. 16, 2024, no pet.) (report "established a relatively simple causal relationship between an unnecessary surgery and the patient's harm" where expert opined that defendant breached standard of care by performing "an experimental elective breast reconstruction surgery that was contraindicated by [patient's] medical history and not standard for reconstructive surgery," and had defendant not done the surgery, the patient would not have suffered any injuries).

The report adequately articulates Dr. Schusterman's opinions regarding causation for these purposes: it explains "how and why" Dr. Horndeski's alleged breaches led to George's injuries. *See Bush*, 714 S.W.3d at 544–46; *see also Amjadi*, 2014 WL 554678, at *5 (where doctor failed to properly perform patient's breast lift and tummy tuck surgery, expert report's statements—that doctor "failed to symmetrically place the nipple areolar complexes and remove excess areolar tissue,

17

and [patient] now has 'asymmetric breasts,' 'malposition of the nipple areolar complex,' and 'areolar tissue' left 'on both of her vertical incisions'"—were sufficient to establish causation).[5]

The trial court did not abuse its discretion in concluding that Dr. Schusterman's report represents a "good-faith effort" to inform Dr. Horndeski of the causal relationship between his failure to provide care in accord with the applicable standards of care and the injury, harm, and damages claimed. *See Bush*, 714 S.W.3d at 543–44; *Baty*, 543 S.W.3d at 694, 698.

## CONCLUSION

We affirm the order of the trial court.

Jennifer Caughey
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

---

[5] Because Dr. Schusterman's report has met the statutory requirements for at least one theory of liability, we need not reach whether his expert report is sufficient as to other liability theories. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *Nikko Cosmetic*, 2021 WL 3082911, at *6 (expert report was sufficient for "at least one viable liability theory" of patient's claim against doctor who performed breast reduction surgery without patient's consent; so it was unnecessary to address "whether her expert report is sufficient as to her other liability theories").

18